UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| JAMES SCHMOCK, | : Case No. 3:16-cv-00310 |
| Plaintiff, | : |
| vs. | : Magistrate Judge Sharon L. Ovington |
| | : (by full consent of the parties) |
| NANCY A. BERRYHILL, Commissioner of the Social Security Administration, | : |
| Defendant. | : |

# DECISION AND ORDER

## I. Introduction

Plaintiff James C. Schmock's application for Disability Insurance Benefits was denied by the Social Security Administration. The denial was based mainly on the decision of Administrative Law Judge (ALJ) Joseph D. Schloss. He concluded that Plaintiff was not under a benefits-qualifying disability because he can still perform his past relevant work as a delivery-truck driver and a painter. (Doc. #6, *PageID* #s 109-10).

Plaintiff brings the present case contending that ALJ Schloss erred by finding his mental impairments not severe and by improperly relying on a vocational expert's testimony. He further contends that substantial evidence fails to support the ALJ's finding that he can perform a limited range of medium-level work. The Commissioner maintains that substantial evidence supports the ALJ's findings, including his evaluation

of the medical opinions of record; his conclusion that Plaintiff could perform a limited range of medium-level work; and his assessment of Plaintiff's credibility.

## II.    Initial Background

Plaintiff asserts that he was under a disability beginning on October 10, 2008 due to his chronic pain, bipolar disorder, and post-traumatic stress disorder (PTSD). His past employment involved work as a stock clerk, a painter in the construction field, and a delivery truck driver.

During a hearing held by ALJ Schloss, Plaintiff was asked to identify the symptoms of his pain. He answered that he has a tingling sensation in his arms that feels like he has hit his "funny bone." (Doc. #6, *PageID* #131). He also feels numbness in his hands and feet. On a bad day he "goes into the fetal position and tries not to move until it's over." *Id*. He estimated that this occurs 14-16 days per month. Plaintiff testified that he cannot predict or control his good days. *Id*. at 135. On good days he can walk his dog for about an hour, but he clarified this "is basically me not walking. It's me throwing the ball and her bringing the ball back to me." *Id.* at 136. When he engages in activities like throwing the ball, his pain increases and he returns to the fetal position or he's in bed all day. He reported that he would not be able to work after a long drive. *Id*. at 136-37. He noted, "Anything that I do that involves physical activity I must pay for…. There's a consequence to my activity." *Id*.

Plaintiff uses a cane for stability. *Id.* at 142. He renewed his driver's license the year before the ALJ's hearing with no restriction, he testified that he does not drive very far, normally just to the grocery store. *Id.* 142-43.

Plaintiff rated his daily pain level at 6, apparently on a 0 to 10 scale. He explained, "When it goes past eight I cannot control it with the medications that I have." *Id.* at 131. This more severe pain can last from 2 to 5 days. *Id*. at 132. Two medications help control the pain: Neurontin (Gabapentin) and Tramadol (Ultram). *Id*. at 131. He does not have significant side effects from Tramadol. *Id*. Plaintiff takes other medications: Nortriptyline (Pamelor), Amitriptyline (Elavil), Seroquel (Quetiapine), Tegretol (Carbamazepine). *Id*. at 138. He does not have significant side effects from Tegretol; he gains weight from Nortriptyline; he gets drowsy and wobbly from Seroquel. *Id*. at 138-39.

As to his mental impairments, Plaintiff described his bipolar symptoms as follows:

> Sometimes there's delusions of grandeur. Sometimes I cannot sleep. I can go for quite a few days without sleeping, but that's also when the pain is involved. It seems as though when I'm in higher amounts of pain it triggers some of these other symptoms that I have psychologically, which is why I started to seek therapy. My family cannot stand to be around me.

*Id*. at 132. Plaintiff explained that he has PTSD as a result of "being fired on … in bad neighborhoods" when he was doing painting that involved graffiti removal. *Id*. at 133. He noted sarcastically, "They didn't like that [graffiti removal] very much." *Id*. He testified that the danger of being shot at was serious enough that "when I would go to those neighborhoods I'd literally have to leave the truck running, door open, paint bucket ready and basically vacate if I saw any gang members …." *Id*. Plaintiff has also witnessed two suicides, one when a man "sat in the middle of his garage and put a shotgun under his chin." *Id.* at 133-34. Thinking about those traumatic events triggers episodes of PTSD. He explained, "It's pretty hard to put those memories behind you and

3

[they are] not very easy to forget." *Id*. at 135. He has never been hospitalized and had not talked about the events until two years before the ALJ's hearing. *Id.* at 135. He takes Valium (Diazepam) to treat PTSD as needed, which is once a week. *Id*. at 139.

Plaintiff summarized his testimony with the following:

> I started seeking the psychological help because I could no longer maintain a normal mindset. So when I went to see the psychologist and the therapist it was basically so that I can get along better with my family, and I really needed help to talk about the things I've witnessed and been through.
>
> As far as the pain, there's no rhyme or reason to it. It either happens or it doesn't. It's very unpredictable … when it starts to inflame or cause the pain.

*Id*. at 140.

At the conclusion of the ALJ's hearing, vocational expert testified about Plaintiff's past relevant work and responded to a series of hypothetical questions. The vocational expert identified Plaintiff's past relevant work to consist of work as "painter, construction painter" and delivery-truck driver. *Id*. at 144.

The ALJ's most significant hypothetical question asked the vocational expert to consider a 41-year-old person with an 11th grade education who can perform a medium level of work (occasionally lift 50 pounds; frequently lift 25 pounds); stand and walk for 6 hours; sit for 6 hours; push and pull with the same weight limits; occasionally climb ladders, ropes, or scaffolds; frequently use ramp and stairs; and frequently balance, stoop, kneel, crouch, and crawl. *Id*. at 144. Significantly for present purposes, the ALJ's described this hypothetical person as someone who "[s]hold avoid machinery and heights due to the medications that he's on," and he should not work with the general public or be

4

required to do any team-oriented tasks. *Id*. at 144-45. The vocational expert testified that such a person would be able to work as a delivery-truck driver and a construction painter. *Id*. at 145.

### III. Medical Evidence

Two record-reviewing medical sources testified during the ALJ's hearing. The first was Robert Thompson, M.D. He explained that between October 10, 2008 and March 31, 2010, "There's evidence of chronic pain or widespread distribution without a specific cause established for any particular location." *Id.* at 119. He testified that a diagnosis of fibromyalgia was not established. An MRI in February 2010 showed mild degenerative disc disease in Plaintiff's lumbar spine. *Id*. (citing Exhibit 10-F, *PageID* #1509). Dr. Thompson further stated, "In summary, there is inadequate evidence upon which to base a proper physical RFC [residual functional capacity] or a specific musculoskeletal diagnosis. The information in the record does not meet or equal any in the musculoskeletal listings." *Id*.

When asked about the period of time starting on February 7, 2012 until March 4, 2014 (the date of the ALJ's hearing),[1] Dr. Thompson reported, "Well, there are further different difficulties in other areas of the body that are not specifically musculoskeletal. Your Honor, that could relate to various symptoms in many areas that do not fall under my expertise, sir, so I do not have anything further to offer in that regard." *Id.* at 120.

---

[1] The ALJ did not ask Dr. Thompson about Plaintiff's impairments between March 31, 2010 to February 2012. *Id.* at 119-20.

5

Psychologist Kent Layton, Psy.D. also testified during the ALJ's hearing. He reported that Plaintiff has bipolar II disorder. *Id.* at 122-23. He indicated that from October 2008 through March 31, 2010, Plaintiff had some depression and anxiety. He was also in some pain, which, Dr. Layton explained, probably worsened his depression and anxiety. *Id*. at 123. Dr. Layton also believed that Plaintiff's depression and anxiety "might be a possible component of his pain." *Id*. He further testified, "I see throughout the chart a lot of normal. It seems what the main thing is … that he's got sarcastic humor. He has anger and irritability problems. I saw the irritability throughout…. So I do see that he has symptoms, but I think it's more medical than psychological…." *Id*. Dr. Layton opined that Plaintiff's "activities of daily activities are mild, his social functioning is marked, [and his] concentration, persistence and pace is moderate." *Id*. at 124. And, Dr. Layton believed that it was appropriate to limit Plaintiff to no work with the general public and no team-oriented tasks would. *Id*. at 126.

Upon questioning by Plaintiff's counsel, Dr. Layton confirmed that Plaintiff's diagnoses were the same during the second time period, starting and continuing after February 7, 2012. Dr. Layton acknowledged that his analysis did not include PTSD "because the doctors' analysis was not sufficient for [him] to do that[.]" *Id.* at 127-28.

The administrative record also contains the opinions provided by treating psychiatrist David Walker, M.D. Plaintiff first saw Dr. Walker for treatment in March 2011. In July 2012, Dr. Walker wrote a letter identifying Plaintiff's psychiatric diagnoses as bipolar disorder and PTSD. He noted, "The severity of [Plaintiff's] depression and manic symptoms is disabling, and certainly complicated by unrelieved

6

chronic pain." *Id*. at 1530. He continued, "In my medical and psychiatric opinion he has permanent disability from the combination of his medical and psychiatric problems. He is unable to concentrate consistently and unable to sustain effort, and has a very poor stress tolerance. He has very poor and limited stress tolerance." *Id*.

In August 2013, Dr. Walker wrote a letter updating his July 2012 letter. He explained that Plaintiff had attended psychotherapy and medication-check appointments regularly over the previous 6 months. *Id*. at 1524. He confirmed that Plaintiff has the same psychiatric diagnoses and the same "reasons for disability." *Id*. He again opined, "In my psychiatric opinion, he is permanently disabled from the combination of his bipolar disorder, post traumatic stress disorder, and chronic pain." *Id*.

Plaintiff's treating family-medicine physician, David Carrington, M.D., wrote a letter in September 2012. He reported that Plaintiff "has pain all over his body affecting his arms (including his hands), his legs (including his feet), and groin." *Id*. at 1331. Dr. Carrington opined that Plaintiff can only occasionally lift 25 pounds. He can more often lift 5 pounds and can climb stairs "only if absolutely necessary." *Id*. at 1332. Dr. Carrington wrote that Plaintiff had difficulty showering due to instability of stance and gait. Consequently, he has fallen several times in the shower. *Id.* at 1333. And, Dr. Carrington explained that Plaintiff has had "lifelong difficulty with concentration and understanding multi-step instructions. Does not handle stress well, as he tenses up, which only serves to increase pain levels in limbs and groin." *Id*. at 1332. He listed Plaintiff's health problems as chronic fatigue; chronic, constant peritoneal pain; chronic pain in buttocks and legs, including his feet; generalized weakness; and obesity with a body mass

7

index of 39.5. *Id.* Plaintiff had been very active before 2008 but gained weight in the preceding few years due to medications, according to Dr. Carrington. *Id.* In the end, Dr. Carrington opined, "I now feel that James C. Schmock's conditions and limitations are indeed permanent, and that his limited ability to concentrate would prevent him from also doing work that is not physical challenging." *Id.* at 1333.

One year later Dr. Carrington reported that Plaintiff "has pain all over his body, including groin, arms, hands, legs and feet. The pain in constant, but varies in location." *Id.* at 1521. He noted that since his previous report on 9/7/2012, Plaintiff's "symptoms have changed as follows:

- Numbness is worse; webspaces of feet are now completely anesthetic, and now has areas of hypoesthesia more proximally, including near knees.

- Fingertips (1st and 3 rays) both now hypo-esthetic."

*Id.* Dr. Carrington opined that Plaintiff still had the ability to lift "25 pounds maximum when not in pain, much less when having pain." *Id.* at 1522. His walking tolerance had improved, although walking remained painful. Dr. Carrington reported that Plaintiff "now walks 1 to 2 miles on most day. Breaks up this into ½ mile walks 2 to 4 times daily." *Id.* And, Dr. Carrington indicated that Plaintiff rarely socializes due to the unpredictable timing of pain flare ups and fatigue; he can sit and stand for a few minutes maximum in any given position, "limited by pain"; he cannot squat; and he does "not handle stress well, as a result muscle tension aggravates his pain." *Id.* In the end, Dr. Carrington opined that Plaintiff's health conditions and limitations were "indeed permanent, and that his limited ability to perform even basic activities would prevent him from also doing work that is not physically challenging." *Id.* at 1523.

8

In May 2012, a record-reviewing state-agency psychologist, Irwin Matus, Ph.D., opined that Plaintiff's psychiatric impairment is not severe. *Id*. at 155-56. In January 2013, another record-reviewing state-agency psychologist, Robert Liss, Ph.D., agreed that Plaintiff psychiatric impairment is not severe. *Id.* at 179-80. Two state-agency record-reviewing physicians, G. Williams, M.D. and K. Beig, M.D., believed that Plaintiff could perform a limited range of medium work. *Id.* at 157-58, 181-83.

## IV. "Disability Defined" and ALJ Schloss' Decision

Plaintiff's eligibility for Disability Insurance Benefits and Supplemental Security Income turned on whether he was under a "disability" as the Social Security Act narrowly defines it. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see* 42 U.S.C. §§ 423(a)(1)(E), 1382(a). An individual's health problems constitute a social-security-eligible disability only when their physical or mental impairments are of such severity that they (1) cannot do their previous work, and (2) cannot, "considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. §§ 423(d)(2)(A), 1392c(a)(3).

As indicated above, ALJ Schloss determined that Plaintiff was not under a disability. To reach this conclusion, the ALJ reviewed the evidence pursuant to the Social Security Administration's sequential evaluation procedure. *See* 20 C.F.R. § 404.1520(a)(4). In the early stages of this review, ALJ Schloss found that Plaintiff's severe impairments—degenerative disc disease and obesity—did not automatically constitute on or more disabilities. (Doc. #6, *PageID* #s 100-02).

9

ALJ Schloss next assessed Plaintiff's residual functional capacity or the most he could do despite his impairments. *See* 20 C.F.R. § 404.1545(a); *see also Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). ALJ Schloss found that Plaintiff could perform medium work with the following limitations:

> he can lift and/or carry 50 pounds occasionally and 25 pounds frequently; he can sit for six hours in an eight-hour workday with customary breaks; he can stand and/or walk for six hours in an eight-hour workday with customary breaks; he can push and/or pull within the weight limits prescribed for lifting and/or carrying; he can occasionally climb ladders, ropes, scaffolds; he can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; he must avoid machinery and heights due to the effects of his medications; and he is precluded from working with the general public and performing team-oriented tasks.

*Id.* at 102-03.

The ALJ next found that Plaintiff retained the ability to perform his past relevant work as a construction painter and delivery truck driver. This ended the ALJ's sequential evaluation because the finding that Plaintiff can perform his past relevant work means, under social security law, that he is not under a disability. *Id*. at 109-10; *see* 20 C.F.R. § 404.1520(a)(4)(iv) ("If you can still do your past relevant work, we will find that you are not disabled.").

The present judicial review determines whether ALJ Schloss applied the correct legal standards and whether substantial evidence supports his findings. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). If he failed to apply the correct legal criteria, his decision may be fatally flawed even if the record contains substantial evidence supporting his findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir.

2009); *see Bowen*, 478 F.3d at 746; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004). A conclusion is supported by substantial evidence when "a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance...." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

V.  **Analysis**

   A.  <u>**The Vocational Expert's Testimony**</u>

Plaintiff contends that the ALJ relied on flawed vocational-expert testimony to support the conclusion that he could perform his past relevant work. *Id.* at 1554-58. He reasons that the <u>Dictionary of Occupational Titles</u> (DOT's) job descriptions for both truck driver and painter require more work abilities than the ALJ included in his hypothetical questions and in his assessment of Plaintiff's residual functional capacity. And, Plaintiff points out that the ALJ did not ask the vocational expert at the conclusion of her testimony whether her testimony is inconsistent with the DOT.

When concluding that Plaintiff can still perform his past relevant work as a delivery-truck driver and construction painter, the ALJ determined that the vocational expert's testimony is consistent with the information in the DOT. (Doc. #6, *PageID* #110). The ALJ specified that he made this finding pursuant to Soc. Sec. R. 00-4p. This Ruling addresses the standards for use of vocational experts who testify before ALJs. 2000 WL 1898704, *1 (Dec. 4, 2000).

11

"Under Social Security Ruling 00-4p, an ALJ has an affirmative duty to inquire as to whether a vocational expert's evidence conflicts with the information provided in the DOT, and to resolve any 'apparent conflicts.'" *Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462, 468 (6th Cir. 2017); *see* Ruling 00-4p, 2000WL 1898704, *2 ("When there is an apparent unresolved conflict between the VE [vocational expert]… and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE …."). This duty is satisfied "where the ALJ asks the vocational expert if there is a conflict." *Id*. (citing *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006)).

Plaintiff is correct that the ALJ failed to ask the vocational at the end of her testimony if there is a conflict between her testimony and the DOT. The ALJ did, however, tell the vocational expert at that start of her testimony to "make sure her testimony is consistent with the [DOT]." (Doc. #6, *PageID* #143). The ALJ also instructed the vocational expert, "If you disagree with the DOT, please tell me." *Id*. The vocational expert responded, "Okay." *Id*. at 144. Although this was a reasonable start to the vocational expert's testimony, it did not elicit any later information from the vocational expert about whether her particular testimony was consistent or inconsistent with the DOT. It therefore did not satisfy the ALJ's affirmative duty—imposed by Ruling 00-4p— to ask the vocational expert whether her testimony conflicts with the information provided in the DOT. The ALJ, moreover, did not ask the vocational expert to resolve any "apparent conflicts." *Staymate*, 681 F. App'x at 468; *cf. Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th Cir. 2009) ("The ALJ fully complied

with 00-4p when he asked the VE whether there was 'any discrepancy between [her] opinions and the DOT standards for the requirements of the jobs [she] named."). This was error in the present case because there are apparent conflicts between the ALJ's hypotheticals and the DOT job descriptions.

The ALJ's hypotheticals (and his assessment of Plaintiff's residual functional capacity) limited the person to work where he "should avoid machinery… due to the medications he is on." (Doc. #6, *PageID* #s 144-45). The vocational expert testified that Plaintiff's past relevant work as a delivery-truck driver falls under DOT 905.663-014 . This section of the DOT describes the truck-driver job to involve, not surprisingly, driving trucks ("Drives trucks with capacity of more than 3 tons…," *id.*) and requires a commercial driver's license. This job also states that a truck driver may also need to perform emergency roadside repairs, such as changing tires, installing light bulbs, tire chains, and spark plugs. Because the DOT's description on its face describes someone driving and otherwise working with machinery, there was an apparent conflict between the DOT and the vocational expert's testimony that the hypothetical person the ALJ described could work as a delivery-truck driver. This apparent conflict never came to light because the ALJ failed to satisfy his affirmative duty to ask the vocational expert at the conclusion of her testimony if the information she had provided was consistent with the DOT. Clarification was particularly needed because the ALJ's hypothetical limitation was due to the "medications that he's on" (Doc. #6, *PageID* #s 144-45)—a tacit acknowledgement of the credence in Plaintiff's testimony that Seroquel makes him drowsy and wobbly. Indeed, the ALJ should have been alerted to the "apparent conflict"

and the need for further questioning of the vocational expert by the commonsense possibility that a hypothetical person limited by medication side effects might not be capable of driving a 3-ton delivery truck.

The Commissioner contends that even if there is an inconsistency between the DOT description of a truck driver and the vocational expert's testimony, it was harmless error for the ALJ not to ask about it because substantial evidence supports the ALJ's finding that Plaintiff could perform his past relevant work as a construction painter.

The vocational expert identified the construction-painter job as DOT 840.381-010. The DOT describes this job to involve, in part, erecting scaffolding or setting up ladders to perform tasks above ground level. *Id*. The ALJ asked the vocational expert about a hypothetical person limited by the caveat that he "should avoid … heights due to the medications he's on." (Doc. #6, *PageID* #s 144-45). This person, according to the ALJ, could work as a construction painter. *Id*. The ALJ relied on this testimony without asking the vocational expert if there is any conflict between her testimony and the DOT's job description. Such questioning was essential because an apparent conflict exists between someone, like Plaintiff, who should avoid working at heights "due to the medications he's on" and the DOT's description of a construction painter as someone who performs tasks above ground level.

The Commissioner contends the DOT's description of a construction painter is consistent with the ALJ's residual functional capacity because the DOT "indicates climbing and exposure to high exposed places are required only '[o]ccasionally,' meaning the conditions 'exist up to 1/3 of the time…." (Doc. #13, *PageID* #1585). This

contention lacks merit because the fact that DOT allows a construction painter to work at heights up to 1/3 of the workday stands in apparent conflict to the vocational expert's testimony that a hypothetical person—limited to someone who should avoid working at heights due to medication side effects—can work as a construction painter. As with the truck-driver job, the ALJ should have been alerted to this apparent conflict by the commonsense notion that a person who should not work at heights due to medication side effects might not be capable of performing a job that requires him to work above ground level 1/3 of the workday.

This returns the analysis to the Commissioner's harmless-error argument. But, because the ALJ erred in relying on the vocational expert's testimony about the construction-painter job without clarifying whether it was consistent or inconsistent with the DOT, the ALJ's same mistake as to the delivery-truck-driver job was not harmless error. It is worth noting that the ALJ might have rescued his decision from the above errors by making alternative findings at Step 5 of the sequential evaluation. With no such alternative finding, the Commissioner is bound by the problems discussed above and with the need, as will be explained next, for a remand for further administrative proceedings.[2]

**B.** **<u>Remand</u>**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own Regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted, for example, when the ALJ

---

[2] In light of the above review, an analysis of the parties' remaining arguments is unwarranted.

failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry v. Comm'r of Social Sec.*, 741 F.3d 708, 725-36 (6th Cir. 2014); or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, an ALJ should be directed to evaluate the evidence of record, including Plaintiff's testimony and the other evidence of record, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings, and by case law; and to evaluate Plaintiff's disability claim under the required

five-step sequential analysis to determine anew whether he was under a disability and whether his applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE ORDERED THAT:**

1. The Commissioner's non-disability finding is vacated;

2. No finding is made as to whether Plaintiff James Schmock was under a "disability" within the meaning of the Social Security Act;

3. This case is remanded to the Commissioner and the Administrative Law Judge under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report; and

4. The case is terminated on the docket of this Court.

September 28, 2017    *s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge